[Cite as *Kinney v. Newtown Bd. of Zoning Appeals*, 2021-Ohio-4217.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARJORIE A. KINNEY, TRUSTEE, | : | APPEAL NO. C-210180 |
| | | TRIAL NO. A-1806659 |
| and | : | |
| CINCINNATI SOCCER CLUB, LTD., | : | |
| | | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| BOARD OF ZONING APPEALS, | : | |
| VILLAGE OF NEWTOWN, OHIO, | | |
| Defendant-Appellant. | : | |

Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 3, 2021

*Wood & Lamping LLP* and *Kathleen F. Ryan*, for Plaintiffs-Appellees,

*Strauss Troy, LPA,* and *Emily Supinger*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Board of Zoning Appeals, Village of Newtown, Ohio, ("BZA") appeals the judgment of the trial court reversing the BZA's decision denying a conditional-use permit requested by plaintiffs-appellees Marjorie A. Kinney, trustee, and Cincinnati Soccer Club ("Cincy SC"). For the reasons that follow, we hold that the trial court did not abuse its discretion in overturning the BZA's decision, and we affirm the court's judgment.

## Background

{¶2} Cincy SC is a nonprofit corporation that runs a youth soccer club. In 2015, Cincy SC acquired permission from a landowner in the Village of Newtown ("Newtown") to use a six-acre, grassy, unimproved area abutting Jefferson Street to the north and St. John Fisher Church to the south for weeknight soccer training. In 2016, the Kinney family purchased the property upon which Cincy SC had been practicing with the intent that Cincy SC remain as a tenant. Problems arose with Cincy SC's use of the property when the church rescinded its permission for Cincy SC members to park in its lot. Cincy SC members then began using Jefferson Street and parking in the grass, but Jefferson Street could not adequately support the amount of cars. In 2018, the Kinney family purchased another parcel of land abutting the six acres it already owned to the west and Church Street to the east in order to obtain road access to the larger parcel.

{¶3} The appellees developed a plan for the now two parcels of land (the "property"), which would include an access road with one ingress lane and two egress lanes, a 50-stall parking lot, a roundabout with a turnaround lane and a drop-off lane, and a small shelter area with restrooms, storage, and picnic tables. The

appellees sought approval for their plan from the Newtown Planning Commission by way of a conditional-use permit.

{¶4} The property is located in a single-family residential district, or "R-SF1" zoning district. Under Section 14.3 of the Newtown Zoning Code ("NZC"), "clubs" are a conditionally-permitted use in a R-SF1 zoning district. A "club" is defined under the NZC as "[a] building or portion thereof or premises owned or operated by a corporation, association, or group of persons for a social, educational, recreational, charitable, political, patriotic or athletic purpose, but not primarily for profit or to render a service which is customarily carried on as a business." NZC 2.028. The parties agree that Cincy SC is a "club" under the NZC.

{¶5} Section 36.3 of the NZC governs conditional-use permits. NZC 36.3(A)(2) provides the planning commission must find that all requirements for the conditional use have been met prior to granting a conditional-use permit. NZC 36.3(C) provides the list of requirements for granting a conditional-use permit, and those relevant provisions are as follows:

> The Commission shall not grant a Conditional Use unless it shall, in each specific case, make specific written findings of fact directly based upon the particular evidence presented to it, that support conclusions that:
>
> * * *
>
> 3. Adequate access roads or entrance and exit drives will be provided and will be so designed as to prevent traffic hazards and to minimize traffic conflicts and congestion to public streets and alleys.
>
> * * *

3

6. The location and size of the Conditional Use, the nature and intensity of the operation involved or conducted in connection with it, the size of the site in relation to it, and the location of the site with respect to streets given access to it, shall be in harmony with the appropriate and orderly development of the district in which it is located.

\* \* \*

8. Evidence that the Conditional Use desired will not adversely affect the public health, safety and morals.

{¶6} Prior to the appellees' hearing before Newtown's planning commission regarding their permit application, the planning commission requested that appellees provide a traffic study. Although the appellees had just two weeks' notice to obtain the study, appellees provided a traffic study completed by Jamal Adhami. Ultimately, Adhami determined that the additional traffic as a result of the proposed soccer field would not reach an unacceptable level.

{¶7} In response to Adhami's traffic study, Newtown's engineer provided a letter to the planning commission. The engineer determined that vegetation along Church Street could create a safety concern because it would impact the sight distance of a driver turning out of the proposed access drive. The engineer also determined that the proposed access drive would create a safety concern in relation to Edith Street, which is located across Church Street and approximately 86 feet to the south of the proposed access drive.

{¶8} The planning commission denied appellees' request for a conditional-use permit, and the appellees appealed to the BZA.

{¶9} The BZA heard appellees' matter de novo. As a result, appellees engaged a second traffic engineer, Jack Pflum, to review their proposal and provide a more in-depth study. Pflum performed a "capacity analysis" to determine the peak traffic hour for Church Street. According to the data collected, Pflum determined that the peak traffic hour on Church Street was from 5 p.m. to 6 p.m. Based on the assumption that 50 children would be practicing during that peak hour, Pflum then assumed that 100 cars would potentially come and go during the peak hour. Using highway capacity software, and assuming 100 trips, Pflum determined that the "level of service" for traffic flow on Church Street would be, at worst, an acceptable "C" level on a scale of A to F.

{¶10} In response to Newtown's engineer's concerns, Pflum directed a surveyor and an engineer to the property to measure the sight distance at the proposed location of the access drive. Based on the sight-distance diagram drawn by the engineer, the sight distance was within acceptable levels, except as to a single hedge obstructing the vision path. Sarah Kinney Donohue, a member of the Kinney family who owns the property, testified that she had already confirmed with the neighboring property owner and his tenant that the hedge could be removed. Pflum also collected data regarding how many vehicles entered and exited nearby Edith Street. Based on the turn-count data, Pflum concluded that the proximity of Edith Street to the proposed driveway would not be a traffic concern.

{¶11} The BZA held a public hearing on appellees' conditional-use permit. Several Newtown residents testified against the proposed conditional use. In particular, neighboring property owner Kevin Sigmund presented a multi-page document and photographs to the BZA regarding traffic congestion on Church Street.

5

Sigmund lives on Church Street across from the proposed access drive, and he testified that he has trouble backing out of his driveway because of the traffic and poor sight conditions. Other residents echoed Sigmund's concerns regarding traffic congestion on Church Street. Police Chief Tom Synan also testified that his department responded to calls for people driving in yards and automobile accidents since Cincy SC started operating on the proposed site.

{¶12} The BZA voted to deny the conditional use, and upheld the planning commission's finding that the proposed use fails to meet NZC 36.3(C)(3), (6), and (8).

{¶13} Appellees appealed to the Hamilton County Court of Common Pleas. The matter was referred to a magistrate. The magistrate determined that the BZA's decision was unsupported by the preponderance of substantial, reliable, and probative evidence. The magistrate found that the testimony in the case "was not of equal weight, with much of the opposition [to the proposed use] being speculative opinions, not facts, and unsupported by factual, objective, or expert testimony." The magistrate found that only the appellees had presented expert testimony from a traffic engineer. The magistrate also determined that the testimony presented at the BZA hearing by the opponents of the proposed use was speculative and entitled to little weight. The BZA filed objections to the magistrate's decision. The trial court overruled the BZA's objections, adopted the decision of the magistrate, and ordered the BZA to grant appellees' conditional-use permit.

{¶14} This appeal by the BZA ensued.

**Law and Analysis**

{¶15} R.C. 2506.04 governs appeals from administrative agencies, such as boards of zoning appeals. Under R.C. 2506.04, a trial court reviews an administrative appeal to determine whether the agency's decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04 gives the common-pleas court "the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 24.

{¶16} By contrast, R.C. 2506.04 limits an appellate court's review of a trial court's judgment in an administrative appeal to " 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable, and probative evidence' as is granted to the common pleas court." *Id.*, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 465 N.E.2d 848 (1984). The standard of review applied by the appellate court in an R.C. 2506.04 administrative appeal " 'strongly favor[s] affirmance' " of the trial court, and the appellate court may only reverse the trial court if the trial court " 'errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law.' " *Village of Terrace Park v. Anderson Twp. Bd. of Zoning Appeals*, 2015-Ohio-4602, 48 N.E.3d 143, ¶ 14 (1st Dist.), quoting *Cleveland Clinic Found.* at ¶ 30. Therefore, "[w]ith respect to the weight of the evidence, this court is limited to determining only whether the common pleas court abused its discretion." *Ware v.*

*Fairfax Bd. of Zoning Appeals*, 164 Ohio App.3d 772, 2005-Ohio-6516, 844 N.E.2d 357, ¶ 4 (1st Dist.), citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148, 735 N.E.2d 433 (2000).

{¶17} In its sole assignment of error, the BZA argues that the trial court erred in determining that its decision was unsupported by the preponderance of substantial, reliable, and probative evidence on the record. The BZA argues that the trial court erred in overturning its decision that the proposed soccer field would increase traffic and create traffic-safety hazards, would not be compatible with the surrounding neighborhood, and would otherwise adversely affect public safety. We review each argument in turn.

### Traffic Hazards and Congestion

{¶18} The BZA determined that the appellees' proposed soccer field did not meet NZC 36.3(C)(3), which requires "[a]dequate access roads or entrance and exit drives" that will "prevent traffic hazards and to minimize traffic conflicts and congestion to public streets and alleys." The BZA found that the proposed field would exacerbate traffic on Church Street by adding 200 additional car trips per evening.

{¶19} With regard to the increase in traffic, appellees' traffic engineer, Pflum, assumed an additional 100 car trips would be added to Church Street at peak hour, from 5 p.m. to 6 p.m., as a result of the proposed soccer field. Even with these additional trips, Pflum concluded that the "level of service" traffic volume for Church Street would be, at worst, an acceptable "C" level. Testimony from Pflum and the owner of Cincy SC indicated that a number of children would carpool to practice, decreasing the total number of car trips.

8

{¶20}  Neighboring property owner Sigmund submitted an exhibit to the BZA that criticized Pflum's traffic analysis.  Specifically, Sigmund argued that 100 car trips was not an accurate data measurement, because some cars would drop off children at soccer practice, leave, and then come back to pick them up.

{¶21}  Sigmund, and ultimately the BZA, misconstrued Pflum's analysis. Pflum's data assumed 50 cars in and 50 cars out during the peak traffic hour for Church Street, because this hour would present the heaviest traffic volume. According to Pflum, the traffic expert, traffic volume is measured during the peak hour, and not an entire evening.  The record evidence shows that Cincy SC's soccer practices last over an hour, so a maximum of 100 car trips to and from the field during the 5 p.m. to 6 p.m. hour is an accurate data measurement.  All other car trips to and from the field occur outside of the peak hour, and thus would not present a traffic concern.

{¶22}  Other residents testified that the traffic congestion on Church Street had become a problem in recent years.  Some residents on Edith Street and Jefferson Street, which abut Church Street across from the property, testified that drivers use these side streets as a "U-turn" to avoid the congestion on Church Street.  According to Pflum, however, the congestion on Church Street had increased for reasons unrelated to Cincy SC.  Chief Synan testified that traffic on Church Street is a problem throughout the day, meaning not just during the times cars would be entering or leaving the soccer field in the evenings.

{¶23}  The BZA also concluded that the appellees' proposed soccer field violated NZC 36.3(C)(3) because the proposed access drive to the property from Church Street would create a safety hazard for residents exiting from their driveways

on Church Street. The BZA's conclusion again appears to rely on testimony from neighboring property owner Sigmund, as well as other neighboring property owners. Sigmund testified that he has difficulty backing out of his driveway onto Church Street, and that the proposed access drive would create a "blind spot." As testified to by Pflum, however, Sigmund would have difficulty backing out of his driveway onto Church Street regardless of the existence of the proposed access driveway, because Church Street is a busy street, and the design of Sigmund's driveway created the "blind spot," not the proposed access drive.

{¶24} Finally, the BZA concluded that the appellees' soccer-field proposal violated NZC 36.3(C)(3) because the proposed access drive would be offset from Edith Street and create a safety hazard. The BZA's conclusion relies on a report submitted to the planning commission by Newtown's engineer that provides the ideal spacing between the proposed access drive and Edith Street would be 140 feet to 175 feet. Newtown's engineer assumed a calculated distance of 100 feet between the proposed access drive and Edith Street. According to Newtown's engineer, this presents a traffic problem because only three or four cars could fit between the proposed drive and Edith Street, potentially blocking Edith Street. In its appellate brief, the BZA argues that Sigmund had calculated the distance between the proposed access drive and Edith Street as 75 feet, not 86 feet as testified to by Pflum, or 100 feet as provided in the report of Newtown's engineer.

{¶25} Sigmund's testimony regarding road measurements did not constitute an expert opinion, and even though the rules of evidence are relaxed in an administrative proceeding, the testimony of a lay witness should not be taken as that of an expert. *Shelly Materials, Inc. v. Daniels*, 2d Dist. Clark No. 2002-CA-13, 2003-

Ohio-51, ¶ 32. Moreover, Pflum acknowledged the concern as to potential blocking of Edith Street by northbound vehicles turning left into the facility, and Pflum conceded that the proposed access drive should ideally line up with Edith Street. However, property-boundary restrictions prevented ideal spacing of the proposed access drive and Edith Street, and according to Pflum's car-count data, only four cars turned left during the peak traffic hour, so the offset did not present a traffic concern in his expert opinion.

{¶26} In reviewing the BZA's decision, the trial court determined that the BZA's conclusion that the proposed soccer field would create traffic hazards and conflicts was unsupported by the preponderance of substantial, reliable, and probative evidence. This court does not have the same power to weigh the evidence from the BZA hearing as does the trial court, and we cannot say that the trial court abused its discretion in this regard. *See Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 24.

### Compatibility with the Surrounding Area

{¶27} The BZA also determined that the proposed soccer field violated NZC 36.3(C)(6), which requires that "[t]he location and size of the Conditional Use, the nature and intensity of the operation involved or conducted in connection with it, the size of the site in relation to it, and the location of the site with respect to streets given access to it, shall be in harmony with the appropriate and orderly development of the district in which it is located."

{¶28} The BZA specifically found that the proposed soccer field would be "disruptive" to the neighborhood, and would not be as "mutually beneficial" as a use permitted as of right. Although it not clear what the BZA meant in labeling the

11

proposed soccer field as "disruptive," in its appellate brief, the BZA points to testimony of residents who stated at the hearing that they could hear noise coming from the soccer field, like car-horns blowing, people cheering, and kids yelling. The BZA also points to Chief Synan's testimony that his department responded to calls regarding car accidents and "people driving in yards" in connection with the soccer club. The residents' testimony regarding the noise and actions attributed to the soccer-club participants did not indicate that the level of interference with the community was in any way pervasive such that it would rise to the level of being "disruptive" to the surrounding area. The record indicates that Cincy SC uses the field for two-and-a-half hours a day during the early evening, Monday through Friday, April through October. Otherwise, the record shows that the field remains unoccupied.

{¶29} It is also unclear why the BZA found that the proposed soccer field would not be as "mutually beneficial" as a permitted use. The BZA argues in its appellate brief that Cincy SC is a private club with a limited membership, and so Cincy SC's proposed use of the property would not provide the same benefits to the community as a religious or educational use. The BZA's argument assumes that no residents of Newtown belong to Cincy SC, even though no evidence was presented regarding the residency of Cincy SC's membership. Moreover, permitted uses in the R-SF1 district include not only residential uses, religious places of worship, and educational institutions, but also open space and parks. *See* NZC 14.1. Appellees' proposed soccer field aligns with these permitted uses in that it would include mostly an open, grassy field, and be used by children for recreational purposes. The field

12

would also remain completely unoccupied the majority of the day and also for six months out of the year.

**{¶30}** The BZA also determined that the proposed soccer field violated NZC 36.3(C)(6), because no residents spoke in favor of the field. The BZA's finding is directly contradicted by the fact that Kinney Donahue who ultimately owns the property is obviously in favor of the proposed use. Kinney Donahue also testified that she was able to secure the second piece of property from the adjacent property owner precisely because of the proposed use. Kinney Donahue testified that she would rather have the property remain mostly an open field rather than be turned into a residential development. Moreover, the fact that residents "spoke out" against the use is not a proper basis for denial of a conditional-use permit. *Hindu Soc. of Greater Cincinnati v. Union Twp. Bd. of Zoning Appeals*, 2019-Ohio-2494, 139 N.E.3d 457, ¶ 28 (12th Dist.) (public opinion is not a proper basis upon which to deny a conditional-use permit); *Savon Ents., LLC v. Bd. of Trustees of Boardman Twp.*, 2016-Ohio-735, 60 N.E.3d 534 (7th Dist.), citing *Essroc Materials, Inc. v. Poland Twp. Bd. of Zoning Appeals*, 117 Ohio App.3d 456, 462, 690 N.E.2d 964 (7th Dist.1997) ("If [a board of zoning appeals] denies the conditional use merely because the residents did not want it, then 'the decision amounts to a rezoning without legislative action.' ").

**{¶31}** The trial court determined that the BZA's decision denying appellees' conditional-use permit because of incompatibility with the surrounding area was unsupported by the preponderance of substantial, reliable, and probative evidence. Again, this court does not have the authority to reweigh the evidence from the BZA hearing, and we cannot say that the trial court abused its discretion in overruling the

BZA's decision. *See Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 24.

## "Public Health, Safety, and Morals"

{¶32} The BZA also determined that the proposed soccer field violated NZC 36.3(C)(8), which requires that the conditional use not adversely affect the "public health, safety and morals." The BZA's reason for denial of appellees' permit under NZC 36.3(C)(8) simply reiterates its previous reasons for denial, including traffic concerns and disruption to the surrounding area. Therefore, based on the analysis above, we hold that the trial court did not abuse its discretion in reversing the BZA's denial of appellees' conditional-use permit on the grounds that it violated public safety.

## Conclusion

{¶33} The trial court did not abuse its discretion in reversing the decision of the BZA, and ordering the BZA to grant the appellees' conditional-use permit. We overrule the BZA's assignment of error. We affirm the judgment of the trial court.

Judgment affirmed.

ZAYAS, P.J., and BOCK, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

14